# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ESMERALDA GARCIA, an individual; on behalf of herself and all others similarly situated, | § § § § § | |
| Plaintiffs, | § § § | |
| vs. | § § | |
| ALLIED INTERSTATE, LLC, a Minnesota Corporation; IQOR US, INC., a Delaware Corporation; LVNV FUNDING, a Delaware Limited Liability Company; RESURGENT CAPITAL SERVICES, L.P., a Delaware Limited Partnership; and ALEGIS GROUP, LLC, a Delaware Limited Liability Company; and JOHN AND JANE DOES 1 NUMBERS THROUGH 25, | § § § § § § § § § § § § § | CAUSE NO.: 5:15-CV-294 |
| Defendants. | § § | |

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT AND TEXAS FAIR DEBT COLLECTION PRACTICES ACT AND DEMAND FOR JURY TRIAL

Plaintiff, ESMERALDA GARCIA, on behalf of herself and all others similarly situated, brings this action for the illegal practices of Defendants, ALLIED INTERSTATE, LLC ("ALLIED"), IQOR US, INC. ("IQOR"), LVNV FUNDING, LLC ("LVNV"), RESURGENT CAPITAL SERVICES, L.P. ("RESURGENT"), and ALEGIS GROUP, LLC ("ALEGIS") (collectively "Defendants"), who, *inter alia*, used false, deceptive, and misleading practices, and other illegal practices, in connection with their attempts to collect an alleged debt from Plaintiff which was more than seven years old.

1.     Plaintiff alleges that the Defendants' collection practices violate the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") and Texas Debt Collection

Practices Act, Tex. Fin. Code §§ 392, *et seq.* ("TDCPA") by attempting to collect a debt which was not legally enforceable because the statute of limitations had run, and could not be reported to the credit bureaus because the debt was older than seven years, without disclosing these facts.

2.      The FDCPA regulates the behavior of collection agencies attempting to collect a debt. The United States Congress found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to a number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(a) - (e).

3.      The FDCPA is a strict liability statute, which provides for actual and statutory damages upon the showing of one violation. In reviewing an FDCPA complaint, courts "must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard, assuming that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors" *McMurray v. ProCollect, Inc*., 687 F.3d 665 (5th Cir. 2012).

4.      The FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection practices and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e(1)-(16). Among these *per se* violations are: false representations concerning the character, amount, or legal status of any debt, 15 U.S.C. §1692e(2)(A); the threat to take any action that cannot legally be taken or that is not intended to be taken, 15 U.S.C. § 1692e(5); and the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C.

§ 1692e(10).

5.      The FDCPA at 15 U.S.C. § 1692f, outlaws the use of unfair or unconscionable means to collect or attempt to collect any debt and names a non-exhaustive list of certain *per se* violations of unconscionable and unfair collection conduct. 15 U.S.C. §§ 1692f (1)-(8).

6.      The TDCPA, like the FDCPA, prohibits debt collectors from using deceptive, coercive, threatening, abusive, and other repugnant practices for the purpose of collecting a consumer debt. *Cushman v. GC Services, L.P.*, 397 Fed. Appx. 24 (5th Cir. 2010).

7.      The Plaintiff, on behalf of herself and all others similarly situated, seeks statutory damages, attorney fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by this Court, pursuant to the FDCPA, TDCPA, and all other common law or statutory regimes.

8.      The Plaintiff, on behalf of herself and all others similarly situated, requests that she and the class members be awarded statutory, common law, or actual damages payable by the Defendant.

9.      This case involves an obligation, or an alleged obligation, primarily for personal, family, or household purposes, and arising from a transaction or alleged transaction. As such, this action arises out of "consumer debt" as that term is defined by Tex. Fin. Code § 392.001(2).

## II. PARTIES

10.     GARCIA is a natural person.

11.     At all times relevant to this complaint, GARCIA has been a citizen of, and resided in, the City of San Antonio, Bexar County, Texas.

12.     ALLIED is a for-profit limited liability company existing pursuant to the laws of Minnesota.

13.     ALLIED maintains its principal place of business at 12755 Highway 55, Suite

300, City of Minneapolis, Hennepin County, Minnesota.

14.     IQOR is a for-profit corporation existing pursuant to the laws of Delaware.

15.     IQOR maintains its principal place of business at 335 Madison Avenue, 27th Floor, City of New York, New York County, New York.

16.     RESURGENT is a limited partnership existing pursuant to the laws of the State of Delaware.

17.     RESURGENT maintains its principal place of business at 55 Beattie Place, Suite 300, MS425, City of Greenville, Greenville County, South Carolina.

18.     ALEGIS is a limited liability company existing pursuant to the laws of the State of Delaware.

19.     ALEGIS maintains its principal place of business at 55 Beattie Place, Suite 300, MS425, City of Greenville, Greenville County, South Carolina.

20.     ALEGIS is the sole general partner of RESURGENT. As such, the acts of RESURGENT are attributed to it.

21.     LVNV is a limited liability company existing pursuant to the laws of the State of Delaware.

22.     LVNV maintains its principal place of business at 625 Pilot Road, Suite 3, City of Las Vegas, Clark County, Nevada.

23.     Defendants, JOHN AND JANE DOES NUMBERS 1 THROUGH 25, are sued under fictitious names as their true names and capacities are yet unknown to Plaintiff. Plaintiff will amend this complaint by inserting the true names and capacities of these DOE defendants once they are ascertained.

24.     Plaintiff is informed and believes, and on that basis alleges, that Defendants JOHN AND JANE DOES NUMBERS 1 THROUGH 25 are natural persons and/or business

-4-

entities all of whom reside or are located within the United States, and personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with and oversaw policies and procedures used by the employees of ALLIED, IQOR, and LVNV that are the subject of this Complaint. Those Defendants personally control the illegal acts, policies, and practices utilized by ALLIED, IQOR, and LVNV and, therefore, are personally liable for all of the wrongdoing alleged in this Complaint.

## III.  JURISDICTION & VENUE

25.     Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. §§ 1331, 1337.

26.     Supplemental jurisdiction for Plaintiff's state law claims arises under 28 U.S.C. § 1367.

27.     Declaratory relief is available pursuant to under 28 U.S.C. §§ 2201, 2202.

28.     Venue is appropriate in this federal district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred within this federal judicial district, and because the Defendants are each subject to personal jurisdiction in the State of Texas at the time this action is commenced.

## IV. FACTS CONCERNING THE PARTIES

29.     Approximately 7 years ago, but in any event, prior to February 15, 2015, Plaintiff allegedly incurred a financial credit card obligation to Sears National Bank ("Sears Obligation").

30.     The Sears Obligation arose out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes.

31.     At some point after Plaintiff's alleged default, the original creditor of the Sears

Obligation determined that the debt was uncollectable, and therefore decided to "charge-off" the debt.

32.     Creditors charge-off debts in accordance with federal regulations that permit the creditor to remove the debt from their financial records. *See* Victoria J. Haneman, *The Ethical Exploitation of the Unrepresented Consumer*, 73 Mo. L. Rev. 707, 713-14 (2008) ("a credit card account is characterized as a 'charge-off' account (or worthless account for taxable purposes) when no payment has been received for 180 days."). These charged-off accounts are treated as a loss and the creditor receives a tax deduction under the Internal Revenue Code.

33.     Plaintiff is informed and believes, and on that basis alleges, that after concluding that the Sears Obligation was in default, Sears National Bank charged-off the account and, together with hundreds or thousands of other charged-off open-ended consumer credit accounts, sold the debt to an unknown purchaser(s) of defaulted consumer debts.

34.     Defendants also contend that the Sears Obligation is in default.

35.     The alleged Sears Obligation is a "debt" as defined by 15 U.S.C. §1692a(5).

36.     The alleged Sears Obligation is a "consumer debt" as defined by Tex. Fin. Code § 392.001(2).

37.     Plaintiff is, at all times relevant to this lawsuit, a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

38.     Plaintiff is, at all times relevant to this complaint, a "consumer" as that term is defined by Tex. Fin. Code § 392.001(1).

39.     Sometime prior to February 15, 2015, the creditor of the Sears Obligation either directly or through intermediate transactions, assigned, placed, transferred, or sold the debt to LVNV for collection.

40.     LVNV is a purchaser of performing and non-performing consumer debts, which are in default at the time the debts are acquired.

41.     LVNV pays an average of less than ten cents on the dollar for the defaulted debts it purchases.

42.     LVNV then attempts to collect the purchased debts by filing lawsuits on them.

43.     Not including lawsuits filed in Justice of the Peace Courts (where most collection lawsuits are filed) LVNV has been the plaintiff in approximately 200 collection lawsuits that have been pending in Texas during the year prior to the filing of this action.

44.     LVNV collects, and attempts to collect, defaulted consumer debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of itself and other debt buyers using the U.S. Mail, telephone, and Internet.

45.     In connection with its debt servicing operations, LVNV routinely hires other debt collectors, such ALLIED, to send dunning letters to consumers in an effort to collect money on the defaulted consumer debts LVNV acquires.

46.     LVNV is, at all times relevant to this complaint, engaged in the act and/or practice of "debt collection" as that term is defined by Tex. Fin. Code § 392.001(5).

47.     LVNV is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

48.     LVNV is, at all times relevant to this complaint, a "debt collector" as that term is defined by Tex. Fin. Code § 392.001(6).

49.     LVNV is, at all times relevant to this complaint, a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

50.     LVNV is not a "creditor" as defined by 15 U.S.C. § 1692a(4).

51.     LVNV contends that Plaintiff defaulted on the Sears Obligation.

52.     Notwithstanding the substantial volume of collection activity in which it engages,

LVNV claims that it has no employees. (Statement of Material Facts filed as Doc. No. 69 in *Randall v. Nelson & Kennard*, 2:09-cv-00387 (D. Ariz., filed Aug. 9, 2010)).

53.     All actions taken in the name of LVNV are in fact taken by RESURGENT, pursuant to a written agreement and power of attorney that LVNV has executed in favor of RESURGENT. (Statement of Material Facts filed as Doc. No. 69 in *Randall v. Nelson & Kennard*, 2:09-cv-00387 (D. Ariz., filed Aug. 9, 2010)).

54.     LVNV has stated on its website, www.lvnvfunding.com, that "LVNV Funding purchases portfolios of both domestic (U.S.) and international consumer debt from credit grantors including banks, finance companies, and other debt buyers. As the new owner of any debt purchased from the original creditor or from another debt buyer, LVNV Funding's name may appear on a customer's credit bureau, or in a letter from a collection agency if the account is delinquent."

55.     LVNV has also stated on its website that, "[a]ll capital markets and business development activities are handled internally, while the management of purchased assets is outsourced to a third-party specializing in the management of these types of consumer assets, Resurgent Capital Services LP (Resurgent). Resurgent is a manager and servicer of domestic and international consumer debt portfolios for credit grantors and debt buyers, and has been hired by LVNV Funding to perform these services on its behalf. Resurgent, a licensed debt collector, may perform these activities directly, or in many cases, will outsource the recovery activities to other specialized, licensed collection agencies. If you are a customer, please direct your inquiries to the firm currently working your account."

56.     The above statements continue to describe the relationship between LVNV and RESURGENT.

57.     RESURGENT and LVNV are under common ownership and management; both

are part of the Sherman Financial Group. *See **Exhibit A***.

58.     RESURGENT directed the collection activity complained of herein even though it was undertaken in LVNV's name.

59.     RESURGENT collects, and attempts to collect, defaulted debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

60.     RESURGENT is, at all times relevant to this complaint, engaged in the act and/or practice of "debt collection" as that term is defined by Tex. Fin. Code § 392.001(5).

61.     RESURGENT is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

62.     RESURGENT is, at all times relevant to this complaint, a "debt collector" as that term is defined by Tex. Fin. Code § 392.001(6).

63.     RESURGENT is, at all times relevant to this complaint, a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

64.     RESURGENT contends that Plaintiff defaulted on the Sears Obligation.

65.     Sometime prior to February 15, 2015, and within the two-year period immediately preceding the filing of the complaint in this action, LVNV either directly or through intermediate transactions assigned, placed, or transferred the Sears Obligation to ALLIED for collection.

66.     ALLIED collects, and attempts to collect, defaulted debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

67.     ALLIED is, at all times relevant to this complaint, engaged in the act and/or practice of "debt collection" as that term is defined by Tex. Fin. Code § 392.001(5).

68.     ALLIED is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

69.     ALLIED is, at all times relevant to this complaint, a "debt collector" as that term

is defined by Tex. Fin. Code § 392.001(6).

70.     ALLIED is, at all times relevant to this complaint, a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

71.     ALLIED is a wholly-owned subsidiary of IQOR.

72.     ALLIED has no employees of its own.

73.     All individuals collecting debts using ALLIED's name are actually all employees of IQOR.

74.     All of ALLIED's collection policies, procedures, and training materials are created, implemented, overseen, and controlled by IQOR.

75.     All individuals collecting debts using ALLIED's name are directly paid wages and bonuses by IQOR.

76.     IQOR directly profits from the collection of debts by using ALLIED's name.

77.     IQOR collects, and attempts to collect, defaulted debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

78.     IQOR is engaged in the act and/or practice of "debt collection" as that term is defined by Tex. Fin. Code § 392.001(5).

79.     IQOR is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

80.     IQOR is a "debt collector" as that term is defined by Tex. Fin. Code § 392.001(6).

81.     IQOR is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

82.     On or about February 15, 2015, ALLIED mailed a collection letter concerning the Sears Obligation to Plaintiff. ("2/15/2015 Letter"). A true and correct copy of the 2/15/2015 Letter is attached hereto as ***Exhibit A***, except that the undersigned counsel has, in accordance

with Fed. R. Civ. P. 5.2, partially redacted the financial account numbers and Plaintiff's home address in an effort to protect Plaintiff's privacy.

83.     The 2/15/2015 Letter was sent, or caused to be sent, by persons employed by Defendants as a "debt collector" as defined by 15 U.S.C. § 1692a(6).

84.     The 2/15/2015 Letter was sent to Plaintiff in connection with the collection of a "debt" as defined by 15 U.S.C. § 1692a(5).

85.     The 2/15/2015 Letter is a "communication" as defined by 15 U.S.C. § 1692a(2).

86.     As of February 15, 2015, approximately 8 years, but in any event more than 7 years, had elapsed since the last payment or activity on the Sears Obligation.

87.     Pursuant to Chapter 16.004 of the Texas Civil Practice & Remedies Code, the statute of limitations is 4 years for filing suit to collect a credit card debt.

88.     After purchasing defaulted consumer debts, LVNV, through its agents, such as IQOR and ALLIED, undertakes various means to collect these debts from consumers such as Plaintiff by, *inter alia*, engaging in a campaign sending thousands of dunning collection letters in the form attached hereto as, which offer to "settle" a consumer's defaulted financial obligation for a large "discount" that is only available for a limited time for the consumer to accept.

89.     Defendants have no legal right or basis to file a lawsuit against Plaintiff or other similarly situated consumers in the State of Texas to collect defaulted credit card debts that are more than four years old, as those debts are legally non-enforceable.

90.     Defendants have no legal right or basis to report the Sears Obligation, and other consumer debts of the same vintage (i.e., more than 7 years old), to Credit Reporting Agencies.

91.     All Defendants regularly attempt to collect defaulted consumer debts in the State of Texas on which the statute of limitations has expired.

92.     The First Paragraph of the 2/15/2015 Letter informs Plaintiff that:

(a)     LVNV "is willing to accept payment in the amount of $901.77 in **settlement** of this [Sears Obligation]" (emphasis added);

(b)     Plaintiff "can **take advantage** of this **settlement offer** if we receive payment of this amount or if you make another mutually acceptable payment arrangement within 40 days" (emphasis added); and

(c)     ALLIED "is **not obligated to renew** this **offer**." (emphasis added)

93.     At the bottom on the First Page of the 2/15/2015 Letter it states, "SEE REVERSE SIDE FOR OTHER IMPORTANT INFORMATION" (emphasis in original).

94.     The reverse side of the First Page of the 2/15/2015 Letter informs Plaintiff:

> You can stop us from contacting you by writing a letter to us that tells us to stop the contact. **Sending such a letter does not make the debt go away if you owe it**. Once we receive your letter, we may not contact you again, except to let you know that there won't be any more contact **or that we intend to take a specific action**. (Emphasis added).

95.     ALLIED regularly mails letters to consumers in the State of Texas, in the form of **Exhibit A**, that offer to settle defaulted debts on which the statute of limitations has expired.

96.     The 2/15/2015 Letter falsely implies that the Sears Obligation is legally enforceable by offering Plaintiff a "settlement" and "settlement offer."

97.     Nothing in the 2/15/2015 Letter disclosed that the Sears Obligation was barred by the statute of limitations and/or not legally enforceable.

98.     It is the policy and practice of ALLIED and LVNV to send and cause the sending of letters, in the form attached hereto as **Exhibit A**, that seek to collect time-barred debts and do not disclose that the debt is time-barred.

99.     The Federal Trade Commission has determined that "Most consumers do not know their legal rights with respect to collection of old debts past the statute of limitations.... When a collector tells a consumer that she owes money and demands payment, it may create the

-12-

misleading impression that the collector can sue the consumer in court to collect that debt." (*See* http://www.ftc.gov/opa/2012/01/asset.shtm).

100.    In early 2012, the FTC entered into a consent decree with Asset Acceptance requiring that it disclose to consumers when it is attempting to collect debts that are barred by the statute of limitations. *United States of America (For the Federal Trade Commission) v. Asset Acceptance, LLC*, Case No. 8:12-cv-182-T-27EAJ (M.D.Fla.).

101.    On October 1, 2012, the Consumer Financial Protection Bureau, which has taken over much of the FTC's enforcement responsibility and has been granted rule-making authority with respect to debt collection, the Federal Deposit Insurance Corporation, the Federal Reserve Board, and the Office of the Comptroller of the Currency entered into consent orders with three American Express-related entities requiring disclosure that debts they attempt to collect were time-barred. 2012-CFPB-0002; 2012-CFPB-0003; 2012-CFPB-0004. The orders require that "the Bank shall continue to provide disclosures concerning the expiration of the Bank's litigation rights when collecting debt that is barred by the applicable state statutes of limitations...." (2012-CFPB-0002, p. 6 of 35, 2012-CFPB-0003, p. 5 of 28).

102.    The October 1, 2012 orders further require disclosure of "all material conditions, benefits and restrictions concerning any offer of settlement. . . ." (2012-CFPB-0002, p. 7 of 35, 2012-CFPB-0003, p. 6 of 28). Thus, they recognize that "settlement offers" that fail to disclose material information may be misleading.

103.    On January 30, 2013, the FTC issued its report, *The Structure and Practices of the Debt Buying Industry*, available at http://www.ftc.gov/os/2013/01/ debtbuyingreport.pdf. The report reaffirms its position in the *United States of America v. Asset Acceptance, LLC*, No. 8:12-cv-182-T-27EAJ (M.D. Fla. 2012), *American Express Centurion Bank* (FDIC-12-315b, FDIC-12-316k, 2012-CFPB-0002), *American Express Bank, FSB* (2012-CFPB-0003) and *American*

*Express Travel Company, Inc.* (2012-CFPB-0004) cases, that a defendant may violate the FDCPA by sending a collection letter demanding payment of a time barred debt without disclosing that the debt was time barred.

104.   The report cites to a study (Timothy E. Goldsmith & Natalie Martin, *Testing Materiality Under the Unfair Practices Acts: What Information Matters When Collecting Time-Barred Debts?*, 64 Consumer Fin. L.Q. Rep. 372 (2010)) that establishes the disclosure that a debt is time barred in a debt collection letter is material to the consumer.

105.   Courts have also held that a debt collector's "settlement" offer made to consumers on a time-barred debt is misleading. *See e.g., McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014).

## V.  POLICIES AND PRACTICES COMPLAINED OF

106.   It is Defendants' policy and practice to engage in unfair and deceptive acts and practices, in violation of 15 U.S.C. §§1692e, 1692e(2), 1692e(5), 1692e(10), and 1692f, by sending consumers letters, such as *Exhibit A*, that offer to settle time-barred debts without disclosure of that fact.

107.   On information and belief the Defendants' collection letters, in the form attached as *Exhibit A*, number at least in the hundreds.

## VI.  CLASS ALLEGATIONS

108.   Plaintiff brings this claim on behalf of three classes, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) and (3).

109.   The First Class consists of (a) all individuals with addresses in the State of Texas (b) to whom ALLIED (c) sent a collection letter offering a settlement of a debt (d) which debt was a credit card debt on which the last payment or activity had occurred more than four years prior to the date of the letter, (e) which letter was sent on or after a date one year prior to the

filing of this action and on or before a date 21 days after the filing of this action.

110.    The Second Class consists of (a) all individuals with addresses in the State of Texas (b) to whom a collection letter was sent on behalf of LVNV (c) offering a settlement of a debt (d) which debt was a credit card debt on which the last payment or activity had occurred more than four years prior to the date of the letter, (e) which letter was sent on or after a date two years prior to the filing of this action and on or before a date 21 days after the filing of this action.

111.    The identities of all class members are readily ascertainable from the records of Defendants and those companies and entities on whose behalf they attempt to collects and/or have purchased debts.

112.    Excluded from the Plaintiff Classes are the Defendants and all officers, members, partners, managers, directors, and employees of the Defendants and their respective immediate families, and legal counsel for all parties to this action and all members of their immediate families.

113.    There are questions of law and fact common to the Plaintiff Classes, which common issues predominate over any issues involving only individual class members.

   (a) With respect to the First Class, the principal issue is whether the Defendants' written communications to consumers, in the form attached as ***Exhibit A***, violates 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), and 1692f;

   (b) With respect to the Second Class, the principal issue is whether the Defendants' written communications to consumers, in the form attached as ***Exhibit A***, violates Tex. Fin. Code §§ 392.304(a)(8) and 392.304(a)(19).

114.    The Plaintiff's claims are typical of the class members, as all are based upon the

same facts and legal theories.

115.    The Plaintiff will fairly and adequately protect the interests of the Plaintiff Classes defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor her attorneys have any interests, which might cause them not to vigorously pursue this action.

116.    This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

(a)    **Numerosity:** The Plaintiff is informed and believes, and on that basis alleges, that the Plaintiff Classes defined above are so numerous that joinder of all members would be impractical.

(b)    **Common Questions Predominate:** Common questions of law and fact exist as to all members of the Plaintiff Classes and those questions predominate over any questions or issues involving only individual class members. The principal issues are:

(i)    With respect to the First Class, the principal issue is whether the Defendants' written communications to consumers, in the form attached as Exhibit A, violates 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), and 1692f;

(ii)    With respect to the Second Class, the principal issue is whether the Defendants' written communications to consumers, in the form attached as Exhibit A, violates Tex. Fin. Code §§ 392.304(a)(8) and 392.304(a)(19).

(c)    **Typicality:** The Plaintiff's claims are typical of the claims of the class members.

Plaintiff and all members of the Classes have claims arising out of the Defendants' common uniform course of conduct complained of herein.

(d)   **Adequacy:** The Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are adverse to the absent class members. The Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor her counsel have any interests which might cause them not to vigorously pursue the instant class action lawsuit.

(e)   **Superiority:** A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender.

117.   Certification of a class(es) under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that a determination that Defendants' written communications to Texas consumers, in the form attached as ***Exhibit A***, violates Tex. Fin. Code §§ 392.304(a)(8) or 392.304(a)(19) would permit Plaintiff and the Second Class to obtain injunctive relief pursuant to Tex. Fin. Code § 392.403(a)(1).

118.   Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiff Classes predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the

controversy.

119.    Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to certify a class(es) only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

**VII. FIRST CAUSE OF ACTION**
**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**(AGAINST ALL DEFENDANTS)**

120.    Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

121.    Defendants violated the FDCPA. Defendants' violation, with respect to their written communications in the form attached as ***Exhibit A*** include, but are not limited to, the following:

(a)    Using false, deceptive, and misleading representations or means in connection with the collection of any debt in violation of 15 U.S.C. § 1692e;

(b)    Making false, deceptive, and misleading representations concerning the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A);

(c)    Making false threats to take action that cannot legally be taken and/or that is not intended to be taken in violation of 15 U.S.C. §§1692e and 1692e(5);

(d)    Using false representations and/or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer in violation of 15 U.S.C. § 1692e(10); and

(e)    Using an unfair or unconscionable means to collect or attempt to collect any debt in violation of 15 U.S.C. § 1692f.

## VIII.  SECOND CAUSE OF ACTION
## VIOLATIONS OF THE TEXAS DEBT COLLECTION PRACTICES ACT
## (AGAINST ALL DEFENDANTS)

122.    Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

123.    Defendants violated Tex. Fin. Code § 392.304(a)(8) by sending written communications, in the form attached as ***Exhibit A***, that misrepresent the character, extent, or amount of a consumer debt and whether a legal obligation exists for the consumer to pay it.

124.    Defendants violated Tex. Fin. Code § 392.304(a)(19) by sending written communications, in the form attached as ***Exhibit A***, that use false, deceptive, and misleading representations and/or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

## IX. PRAYER FOR RELIEF

125.    WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and in favor of the Classes as follows:

A.    **For the FIRST CAUSE OF ACTION**:

(1)    An order certifying that the First Cause of Action may be maintained as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and the undersigned counsel to represent the First Class as previously set forth and defined *supra*;

(2)    An award of statutory damages for Plaintiff and the First Class pursuant to 15 U.S.C. § 1692k(a)(2)(B);

(3)    An award of actual damages for Plaintiff and the First Class, including all amounts paid on time-barred debts, pursuant to 15 U.S.C. § 1692k(a)(1);

(4)    Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. §

1692k(a)(3); and

(5)     For such other and further relief as may be just and proper.

B.     **For the SECOND CAUSE OF ACTION**:

(i)     An order certifying that the Second Cause of Action may be maintained as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure and Tex Fin. Code § 392.403(a), and appointing Plaintiff and the undersigned counsel to represent the Classes as previously set forth and defined above.

(ii)    An award of actual damages for Plaintiff and the Second Class, including all amounts paid on time-barred debts, pursuant to Tex Fin. Code § 392.403(a)(2) in an amount to be determined at trial;

(iii)   For injunctive relief for Plaintiff and the Second Class pursuant to Tex. Fin. Code § 392.403(a)(1), including enjoining the Defendants from engaging in further violations of Chapter 392 of the Texas Finance Code as complained of herein;

(iv)    For declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202 adjudicating that Defendants' collection conduct complained of herein violates the violates the TDCPA;

(v)     Attorney's fees, litigation expenses, and costs pursuant to Tex Fin. Code § 392.403(b); and

(vi)    For such other and further relief as may be just and proper.

## X. JURY DEMAND

Plaintiff hereby demands that this case be tried before a Jury.

DATED:     April 16, 2015

Respectfully submitted,

/s/ James O. Latturner
James O. Latturner, Esq.
IL Bar No. 1588095
Francis R. Greene, Esq.
IL Bar No. 6272313
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603
Telephone: (312) 917-4500
Facsimile:  (312) 419-0379
E-Mail: jlatturner@edcombs.com

Andrew T. Thomasson, Esq.
NJ Bar No. 048362011
THOMASSON LAW, LLC
101 Hudson Street, 21st Floor
Jersey City, NJ 07302
Telephone: (201) 479-9969
Facsimile:  (855) 479-9969
E-Mail: andrew@thomassonllc.com

*Attorneys for Plaintiff, Esmeralda Garcia, and all others similarly situated*